T.C. Summary Opinion 2006-185

UNITED STATES TAX COURT

DONTEZ R. PARKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15672-05S.            Filed December 7, 2006.

Dontez R. Parks, pro se.

<u>Terry Serena</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $3,215 for taxable year 2004. The issues for decision are: (1) Whether petitioner is entitled to a dependency exemption deduction for his niece, BMB;[1] (2) whether petitioner is entitled to an earned income credit; and (3) whether petitioner is entitled to both a child tax credit and an additional child tax credit.

## Background

Some of the facts were stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference.

At the time the petition was filed, petitioner resided in Miamisburg, Ohio.

During the taxable year 2004, petitioner held several jobs. He worked for Burlington Coat Factory, Extra Help Staffing, and American Building Maintenance Company (ABM) earning $1,976, $31, and $10,065, respectively.

During the greater part of 2004, petitioner worked for ABM as an office cleaner at a building that was located across the street from an apartment he lived in with his girlfriend, Trueshonda Carmicle (Ms. Carmicle). Petitioner's daily work shift was from 5:30 p.m. until 2:00 a.m. He worked for ABM from March 2003 until sometime in 2005.

---

[1] The Court uses only the initials of the minor child.

Ms. Carmicle worked at a YMCA located near her home in an after-school program for 3 to 4 hours per day. From the income derived from her job, Ms. Carmicle helped pay for the rent, food, and other expenses she shared with petitioner.

Petitioner has a sister, Unique Parks (Ms. Parks), who lives in Lima, Ohio, with her mother. Ms. Parks had a child, BMB, who was born on December 4, 2003. Following the birth of her child, Ms. Parks began experiencing difficulty in school and was required by school officials to attend summer classes. Because Ms. Parks was required to attend extra tutoring and, eventually, summer school, care for her child fell upon petitioner's mother. Subsequently, petitioner's mother found it difficult to care for Ms. Parks and BMB in addition to her employment as a nursing home aide, and her guardianship of several foster children residing already at her residence.

BMB's father has been generally uninvolved with his child since her birth and has not provided any form of financial assistance. Ms. Parks began receiving assistance vouchers, known as "WIC", for her and her baby. The vouchers entitled Ms. Parks to a monthly amount of food items such as milk, eggs, cheese, cereal, and juice. Ms. Parks also received Medicaid benefits that entitled BMB to medical care.

Petitioner's niece, BMB, came to live with petitioner and Ms. Carmicle sometime in late May 2004. Ms. Carmicle would often

take the child to work with her at the YMCA.  If the child was not with Ms. Carmicle, petitioner would watch BMB after he returned home from work in the early morning.

In early 2004, petitioner and Ms. Carmicle resided in a one-bedroom apartment in Fairborn, Ohio.  On December 28, 2004, petitioner and Ms. Carmicle had their first child.  Around this time, petitioner and Ms. Carmicle moved to a new residence in Miamisburg, Ohio.

On his 2004 tax return, petitioner claimed a dependency exemption deduction, an earned income credit, and both a child tax credit and an additional child tax credit with respect to BMB.  Respondent disallowed the dependency exemption deduction claimed by petitioner because petitioner did not show that he provided over half of the support for BMB or that BMB resided with him for over one-half of the year.  As a result of the disallowance, respondent further disallowed both the claimed earned income credit and child care credits.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct.  Welch v. Helvering, 290 U.S. 111, 115 (1933).  In pertinent part, Rule 142(a)(1) provides the general rule that "The burden of proof shall be upon the petitioner".  In certain circumstances, however, if the taxpayer provides credible evidence with respect to any factual

issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a); Rule 142(a)(2). Credible evidence is "'the quality of evidence which, after critical analysis, the court would find sufficient * * * to base a decision on the issue if no contrary evidence were submitted'". [2] <u>Baker v. Commissioner</u>, 122 T.C. 143, 168 (2004) (quoting <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001)). Section 7491 applies only if the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2).

With respect to the instant matter, petitioner has not raised an argument with respect to shifting the burden of proof under section 7491. Further, petitioner has not shown that he complied with the threshold requirements thereafter. Respondent, on the other hand, argues that petitioner has not fully cooperated with respondent's requests for information, documents, and meetings. The Court concludes on this record that the burden of proof remains on petitioner. Therefore, petitioner bears the burden of showing that he is entitled to a dependency exemption

_____

[2] We interpret the quoted language as requiring the taxpayer's evidence pertaining to any factual issue to be evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer. See <u>Bernardo v. Commissioner</u>, T.C. Memo. 2004-199.

deduction, that he is entitled to an earned income credit, and that he is entitled to a child tax credit for the year at issue.

Moreover, deductions are a matter of legislative grace and are allowed only as specifically provided by statute. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A.  Dependency Exemption

Section 151(c) allows a taxpayer to deduct an annual exemption amount for each dependent of the taxpayer. Section 152(a) defines the term "dependent", in pertinent part, to include "A son or daughter of a brother or sister of the taxpayer". Sec. 152(a)(6).

To prevail on this issue, petitioner must show by competent evidence that: (1) the individual claimed satisfies the definitional requirements provided in section 152(a) (the relationship requirement); (2) the amount of total support provided for the individual claimed; and (3) he provided more than half of such support (taken together, the support requirement). See secs. 151(c)(1)(A), 152(a).

In this instance, the claimed individual, BMB, satisfies the definitional requirement of "dependent" within the meaning of section 152(a)(6). Specifically, BMB is the daughter of petitioner's sister. Accordingly, the remaining issue is whether

petitioner provided more than one-half of his niece's total support for 2004.

For this purpose, "support" is defined as including food, shelter, clothing, medical and dental care, education, etc. See sec. 1.152-1(a)(2)(i), Income Tax Regs. Section 1.152-1(a)(2)(i), Income Tax Regs., which provides:

> For purposes of determining whether or not an individual received, for a given calendar year, over half of his support from the taxpayer, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied. * * *

In other words, the support test requires the taxpayer to establish the total support costs for the claimed individual and that the taxpayer provided at least half of that amount. Archer v. Commissioner, 73 T.C. 963, 967 (1980); see Cotton v. Commissioner, T.C. Memo. 2000-333; Gulvin v. Commissioner, T.C. Memo. 1980-111, affd. 644 F.2d 2 (5th Cir. 1981); Toponce v. Commissioner, T.C. Memo. 1968-101. Thus, a taxpayer who cannot establish the total amount of support costs for the claimed individual generally may not claim that individual as a dependent. Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Cotton v. Commissioner, supra. The amount of total support provided by the taxpayer may be reasonably inferred from competent evidence. See Stafford v. Commissioner, 46 T.C. 515, 518 (1966).

Petitioner testified that BMB resided with him from May 2004 until March 2005. With respect to the amounts provided for his niece's support, petitioner explained that, due to an overcharge on his bank account, he was required to deposit his paychecks in his girlfriend's account. He testified that he gave Ms. Parks approximately $100 every 2 weeks to support his niece, BMB.

Petitioner further testified that he bought BMB clothes, food, and diapers. He estimated that he spent $30-35 per week for food for BMB. Petitioner also stated that he purchased $30 worth of disposable diapers in a box that would last approximately a month. According to petitioner, Ms. Carmicle would also purchase baby clothes for BMB.

At trial, Ms. Parks confirmed that BMB went to live with petitioner in May 2004, while she attended summer school, which ended in July 2004. For a 1 month period between summer school and the start of the school year in August, BMB "came and stayed for a little bit." According to Ms. Parks, BMB "sometimes" stayed with her at her mother's house during weekends after the start of the school year. Ms. Parks also testified that her mother would help financially when she could. In Ms. Parks' estimation, it cost about $100 per month to support BMB.

We find petitioner's testimony to be credible as to the fact that he provided support for his niece. We also find petitioner's sister to be credible as well. However, the record

as to the actual amounts provided by petitioner for the care of the child is distressingly vague and incomplete.

In this regard, petitioner did not keep records of how much he spent on BMB. While petitioner was able to partially reconstruct for the Court an approximate dollar amount of total support provided for his niece, there is no documentation with respect to the expended funds. In addition, petitioner's mother apparently provided some financial support for BMB, although there is also no accounting for these funds. Moreover, petitioner's sister received "WIC" vouchers and Medicaid. Petitioner also acknowledged that Ms. Carmicle contributed towards rent, food, and other incidental household items as well as for some of BMB's expenses. Thus, we cannot clearly say that petitioner has established the total amount of support for BMB in taxable year 2004.

Petitioner attempted to show that he provided over half of the support for BMB by submitting his paychecks from ABM as well as bank account statements in Ms. Carmicle's name. However, the deposits to the bank account do not appear to correlate with petitioner's paychecks. From the information before us, we discern that petitioner deposited two ABM checks in Ms. Carmicle's bank account. The two checks are: (1) October 16, 2004, in the amount of $477.51, which was deposited on October

25, 2004; and (2) November 12, 2004, in the amount of $419.76, which was deposited on December 3, 2004.[3]

We are convinced that, during 2004, petitioner paid expenses on behalf of BMB and was a caring uncle to his niece. However, petitioner has failed to provide the Court with any significant corroborative evidence establishing the total amount of support or that he provided over half of BMB's support during the 2004 tax year.

Upon the basis of the record before us, respondent's determination on this issue is sustained.

B.  Earned Income Credit

As previously stated, petitioner claimed an earned income credit for taxable year 2004 with BMB as the qualifying child. In the notice of deficiency, respondent disallowed the earned income credit.

Subject to certain limitations, an eligible individual is allowed a credit which is calculated as a percentage of the individual's earned income. Sec. 32(a)(1). Earned income includes wages. Sec. 32(c)(2)(A). Section 32(c)(1)(A)(i), in

---

[3] A difficulty is that for about half of the ABM paychecks, the reported amounts are for "gross" with the "net" amounts cut off in the joint exhibits. Even taking into account net income calculations, the amounts still do not correspond with the amounts deposited. For some of the ABM paychecks that clearly report net income, there are no corresponding bank deposit statements. For example, there are no statements for June, July, September, and December 2004.

pertinent part, defines an "eligible individual" as "any individual who has a qualifying child for the taxable year".  A "qualifying child" is one who satisfies a relationship test, a residency test, and an age test.  Sec. 32(c)(3).  The pertinent parts of section 32(c)(3) provide:

> (3) Qualifying child.--
>
>> (A) In general.--The term "qualifying child" means, with respect to any taxpayer for any taxable year, an individual--
>>
>>> (i) who bears a relationship to the taxpayer described in subparagraph (B),
>>>
>>> (ii) who has the same principal place of abode as the taxpayer for more than one-half of such taxable year, and
>>>
>>> (iii) who meets the age requirements of subparagraph (C).

As relevant herein, a descendant of a brother or sister who the taxpayer cares for as the taxpayer's own child satisfies the relationship test.  Sec. 32(c)(3)(B)(i)(II).  Therefore, we are willing to assume that BMB satisfies the relationship test.

However, although we find petitioner's testimony credible that BMB did reside in his residence in Miamisburg, Ohio, for a period of time in 2004, petitioner did not establish that his residence was the principal place of abode for BMB for more than one-half of the taxable year 2004.  Ms. Parks's testimony shows

that BMB frequently stayed with her at her mother's house in Lima, Ohio. We find that BMB fails the residency test of section 32(c)(3)(ii). Accordingly, respondent's determination on this issue is sustained.

C. Child Tax Credit

As previously stated, petitioner claimed a child tax credit and an additional child tax credit for the tax year 2004 with BMB as the qualifying child. In the notice of deficiency, respondent disallowed both the child tax and the additional child tax credits with respect to BMB.

Section 24(a) authorizes a child tax credit with respect to each "qualifying child" of the taxpayer. The term "qualifying child" is defined in section 24(c). As relevant to these facts, a qualifying child means an individual with respect to whom the taxpayer is allowed a deduction under section 151. Sec. 24(c)(1)(A).

We have already held that petitioner is not entitled to the dependency exemption deduction under section 151 for BMB. Accordingly, BMB is not considered a "qualifying child" within the meaning of section 24(c). It follows, therefore, that petitioner is not entitled to a child tax credit under section 24(a).

D.  Additional Child Tax Credit

The child tax credit is a nonrefundable personal credit that was added to the Internal Revenue Code by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 101(a), 111 Stat. 796, with a provision for a refundable credit, the additional child tax credit, for families with three or more children.  For taxable years beginning after December 31, 2000, the additional child tax credit provision was amended to remove the restriction that only families with three or more children are entitled to claim the credit.  See sec. 24(d)(1); Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 201(c)(1), 115 Stat. 46.

In the absence of other nonrefundable personal credits, a taxpayer is allowed to claim a child tax credit in an amount that is the lesser of the full child tax credit or the taxpayer's Federal income tax liability for the taxable year.  See sec. 26(a).  If the child tax credit exceeds the taxpayer's Federal income tax liability for the taxable year, a portion of the child tax credit may be refundable as an additional child tax credit under section 24(d)(1).  The refundable and nonrefundable portions of the child tax credit cannot exceed the total allowable amount of the credit.

Petitioner is not entitled to claim an additional child tax credit because he did not qualify for a child tax credit.

In view of the foregoing, we sustain respondent's determination on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.